Robert B. Sykes (3180)
    bob@sykesmcallisterlaw.com
Alyson C. McAllister (9886)
    alyson@sykesmcallisterlaw.com
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 South State Street, Suite 240
Salt Lake City, Utah 84111
Telephone (801) 533-0222

*Attorneys for Plaintiff*

# THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| WESTLAKE ALF PROPERTIES II, LLC and LAKE STEVENS SENIOR HOUSING LLC, *Plaintiffs*, vs. LONE PEAK CAPITAL INVESTMENTS, LLC; REES U. JENSEN; NUHOME INVESTMENTS, LLC; TRICIA JIN; and JOHN and JANE DOES 1-10, *Defendants.* | **COMPLAINT and JURY DEMAND** Case No. 2:22-cv-00282-DAO Magistrate Judge: Daphne A. Oberg |

Plaintiffs WESTLAKE ALF PROPERTIES II, LLC and LAKE STEVENS SENIOR HOUSING LLC allege against Defendants LONE PEAK CAPITAL INVESTMENTS, LLC, REES U. JENSEN, NUHOME INVESTMENTS, LLC, TRICIA JIN; and JOHN and JANE DOES 1-10 as follows:

**PRELIMINARY STATEMENT**

This case arises out of a promissory note negotiated and facilitated by Defendants Lone Peak Capital Investments, LLC ("Lone Peak"), Rees U. Jensen ("Jensen"), and Tricia Jin ("Jin"), and entered into between Westlake ALF Properties II, LLC ("Westlake") and Lake Stevens

Senior Housing, LLC ("Lake Stevens") (collectively the "Borrowers") and NuHome Investments, LLC ("NuHome"), relating to the failed sale of commercial real estate in Utah (collectively the "Utah Properties") to NuHome. Plaintiffs are alleging that Defendants made fraudulent and intentional misrepresentations and omissions to induce Plaintiffs to sign a promissory note ("the Note") obtaining a loan from NuHome ("the Loan") and then transfer a portion of the proceeds of the Loan back to Defendants. The Note was entered into based upon the representation that Lone Peak, or its assigns, would purchase the Utah properties and then the Note would be forgiven upon closing of the sale in exchange for Jin, or her assigns, receiving an equitable interest in the Utah Properties. The proceeds of the Note were for the purpose of funding pre-closing costs and expenses related to the sale transaction. A portion of the proceeds from the Loan were loaned by the Borrowers to Jenson and/or Lone Peak, who have neither repaid the funds no provided any accounting of the funds. Plaintiffs seek compensatory damages, punitive damages, affirmative and equitable relief, attorney fees, costs, interest, and any other relief as this Court deems just and equitable.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Westlake ALF Properties II, LLC ("Westlake") at all times relevant herein, was an Oregon limited liability corporation with its principal place of business in the State of Oregon.

2. Plaintiff Lake Stevens Senior Housing, LLC ("Lake Stevens") at all times relevant herein, was an Oregon limited liability corporation with its principal place of business in the State of Oregon.

3. Upon information and belief, Defendant Lone Peak Capital Investments, LLC ("Lone Peak") is a Utah limited liability corporation with its principal place of business in Salt Lake County, State of Utah.

4. Upon information and belief, Defendant Rees U. Jensen ("Jensen") is a resident of the State of Utah, and a principle of Lone Peak.

5. Upon information and belief, Defendant NuHome Investments, LLC ("NuHome") is a Wyoming limited liability corporation with its principal place of business in Wyoming, doing business in the State of Utah.

6. Upon information and belief, Defendant Tricia Jin ("Jin") is a resident of the State of California, and a principle of NuHome.

7. Upon information and belief, Defendant John and Jane Does 1-10 include other members, owners, and/or agents of Defendants Lone Peak and/or NuHome involved in the failed sale of the Utah properties whose names and identities are unknown at this time.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Salt Lake County, State of Utah.

9. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.

## FACTUAL ALLEGATIONS

### ~ A. Background ~

10. In 2019, two senior living properties in Utah (the Utah Properties), one located in Salt Lake and the other located in Lindon, went into default with the bank holding the mortgages on the properties.

11. Jensen, knowing the properties were in default, approached the owner of those properties and expressed Lone Peak's interest in purchasing the Utah Properties.

### ~ B. Agreement to Purchase Utah Properties ~

12. On or about May 16, 2019, Lone Peak entered into an Agreement with Plaintiffs (through various legal entities they were affiliated with) to purchase the Utah Properties.

13. At the time this Agreement was made, Lone Peak and Jensen knew the Utah Properties were being foreclosed upon by the lender, the Bank of Utah.

14. Jensen, acting as an agent for Lone Peak, represented to Plaintiffs that he intended to secure funding to purchase the Utah Properties through renegotiating the mortgages with the Bank of Utah, equity from NuHome, and other sources of funding that were not disclosed to Plaintiffs.

15. Jensen, acting as an agent for Lone Peak, represented to Plaintiffs that he was an agent of the lender, NuHome.

16. Both Jensen and Jin physically inspected the Utah Properties.

17. Jin assisted Jensen by trying to secure additional sources of financing from outside the United States.

18. Jensen represented to Plaintiffs that the necessary financing for the sale had been secured, but approximately $100,000 was required for "pre-closing costs" in order to effectuate the purchase.

19. Jenson and/or Lone Peak also represented to Plaintiffs that an additional $150,000 would be needed for working capital to maintain operations at the Utah Properties through closing.

### ~ C. Loan from NuHome ~

20. On or about June 1, 2019, Jensen arranged for NuHome to provide a loan for $250,000 for a term of six (6) months (the "Note") to provide working capital and fund pre-closing costs related to the sale of the Utah Properties.

21. Jensen and/or NuHome required that a person be included as a borrower on the Note, in addition to the Utah Properties.

22. At Jenson's instruction, the Note was taken out by Plaintiffs, personally guaranteed by a person affiliated with Plaintiffs, and secured with deeds of trust on two parcels of land located in Colorado and Washington., which were owned by Westlake and Lake Stevens, respectively.

23. The Note included onerous interest amounts and penalties after the initial six (6) month period, which terms Borrowers only agreed to because of the representations made by Defendants that the Note would be forgiven at the closing of the sale of the Utah Properties.

24. The language included in the Note specifically provided that upon closing of the sale of the Utah Properties, the Loan would be forgiven.

25. Plaintiffs took out the Loan and Borrowers personally guaranteed the Note based upon Jensen's representation that he had secured funding from the Bank of Utah, and Defendants' representation that the Note would be forgiven by NuHome at closing.

26. Immediately upon the Loan being funded, Plaintiffs wired $100,250 to Lone Peak as Jensen had demanded.

27. Plaintiffs wired this money based upon Jensen's representations that these funds were required in order to close the sale.

28. In wiring these funds, Plaintiffs further relied upon Jensen's representations that if the sale was unsuccessful, these funds would be returned to Plaintiffs.

29. Jensen represented to Plaintiffs that the $100,250 should be treated as a loan to him/Lone Peak.

30. Upon information and belief, Jensen and Lone Peak knew this money was not needed to close the sale and/or would not be used to close the sale.

31. According to written representations made by Jensen, the $100,250 to be paid out of the loan to Jensen/Lone Peak for closing costs was intended by both parties to be a loan from Borrowers to Jensen/Lone Peak.

32. Mr. Jensen held himself out as an agent of NuHome by requiring Plaintiffs to pay the attorney fees for the drafting/preparation of the Loan documentation.

### ~ D. Failed Sale/Repayment ~

33. Defendants did not purchase the Utah Properties.

34. As a result, the bank foreclosed on the Utah Properties, and they were turned over the bank.

35. After the foreclosure, the Bank of Utah informed Plaintiffs that neither Jensen nor Lone Peak ever attempted to secure any funding from them prior to the foreclosure.

36. Upon information and belief, Jensen and Lone Peak knew they had not made any attempts to secure funding, let alone actually secured funding, at the time they represented to Plaintiffs that funding had been secured.

37. Instead, Jenson, who was upon information and belief acting on behalf of NuHome, attempted to negotiate directly with the Bank of Utah to purchase the Utah Properties

directly from the bank **after it had foreclosed** on the Utah Properties and acquired the title to them. *See* Exhibit A, Lone Peak Term Sheet to Bank of Utah, dated September 5, 2019.

38. On or about November 30, 2021, NuHome demanded repayment on the Note, with interest, and threatened to foreclose on the properties securing the loan if payment was not made.

39. Plaintiffs in turn demanded Jensen/Lone Peak repay the portion of the loan that was passed along to them, along with any associated interest on that portion of the loan.

40. Jensen/Lone Peak refused to repay their portion of the loan.

41. To date, Jensen/Lone Peak has not given any kind of accounting as when or how the $100,250, which they previously had represented was intended to be for closing costs, was actually spent given that the sale never closed.

42. NuHome is now trying to foreclose on both deeds of trust to collect the entire principal of the Note (i.e., $250,000) plus interest and penalties in excess of $150,000.

### ~ E. Fraud ~

43. Upon information and belief, despite the representations made to Plaintiffs to the contrary, it was Defendants' intent to purchase the Utah Properties directly from the bank after foreclosure, and they never had any intent of closing on the sale contract with Plaintiffs.

44. Upon information and belief, Defendants acted in concert to induce the Plaintiffs to borrow money with onerous terms based on false representations that the loan would be forgiven at the closing of a sale Defendants never intended to close.

45. Upon information and belief, Defendants further acted in concert to induce Plaintiffs to immediately transfer 40% of the borrowed money back to Defendants themselves,

based upon false representations that the money would be repaid if the sale did not close, even though Defendants had no intent to return or repay that money.

## FIRST CAUSE OF ACTION

~ **Negligent Misrepresentation** ~

*Against All Defendants*

46. Plaintiffs incorporate by reference all other paragraphs herein.

47. The Supreme Court of Utah established that:

> Utah long ago acknowledged the tort of negligent misrepresentation, which provides that *a party injured by reasonable reliance* upon a second party's careless or *negligent misrepresentation of a material fact* **may recover damages** resulting from that injury *when the second party had a pecuniary interest* in the transaction, *was in a superior position* to know the material facts, and should have reasonably foreseen that the *injured party was likely to rely upon the fact*.

*Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,* 713 P.2d 55, 59 (Utah 1986) (emphasis and double emphasis added).

48. Defendants all had a financial interest in the sale, as well as in inducing Plaintiffs to sign the Note.

49. Defendants were in a better position than Plaintiffs to know the true facts related to these transactions because Defendants were the buyers of the Utah properties and Defendants arranged the loan.

50. Because of this financial interest and because of Defendants' position with regard to these transactions, Defendants owed a duty to of care to the Plaintiffs to correctly and accurately represent all material (i.e., important) facts relating to the sale of the Utah Properties

and procuring the loan from NuHome, including a duty to use reasonable care to determine whether the representations being made were true.

51. In order to induce Plaintiffs to enter into the Loan, Defendants made representations that the following important facts were true:

a) Defendants had secured the funding from the bank that was necessary to close the sale of the Utah Properties;

b) The loan from NuHome was necessary in order to close the sale of the Utah Properties;

c) The loan from NuHome would be forgiven upon the sale of the Utah Properties;

d) The lender (NuHome) was a participant in the purchase of the properties;

e) Jensen was acting as an agent of NuHome, and

f) Defendants had the ability to complete the sale.

52. Defendants failed to use reasonable care to determine whether these important facts were true.

53. These important facts were not true.

54. Plaintiffs reasonably relied upon these representations in taking out the Loan, entering into the Note, and transferring a portion of the funds to Defendants Jensen and/or Lone Peak.

55. As a result of relying on these representations, Plaintiffs suffered injury/damage, including monetary damages, in an amount to be proved at trial.

## SECOND CAUSE OF ACTION

### ~ **Fraudulent Misrepresentation** ~

*Against All Defendants*

56. Plaintiffs incorporate by reference all other paragraphs herein.

57. Defendants made false statements about the following important facts relating to the sale of the Utah Properties and/or the terms of the Note:

   a) Defendants had secured the funding from the bank that was necessary to close the sale of the Utah Properties;

   b) The loan from NuHome was necessary in order to close the sale of the Utah Properties;

   c) The loan from NuHome would be forgiven upon the sale of the Utah Properties;

   d) The lender (NuHome) was a participant in the purchase of the properties;

   e) Jensen was acting as an agent of NuHome, and

   f) Defendants had the ability to complete the sale.

58. These important facts were not true.

59. Defendants knew these statements were false, and/or they were made with a reckless disregard for the truth.

60. Defendants intended that Plaintiffs would rely on these statements in signing the Note with Defendant NuHome and transferring a portion of the funds to Defendants Jensen and/or Lone Peak.

61. Plaintiffs reasonably relied upon these representations in taking out the Loan, entering into the Note, and transferring funds to Defendants Jensen and/or Lone Peak.

62. As a result of relying on these representations, Plaintiffs suffered injury/damage, including monetary damages, in an amount to be proved at trial.

63. As a result of Defendants' fraudulent conduct, Plaintiffs are entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION

### ~ Detrimental Reliance and/or Promissory Estoppel ~

*Against Defendants Lone Peak and Jensen*

64. Plaintiffs incorporate by reference all other paragraphs herein.

65. The Utah Court of Appeals has established:

> The necessary elements of promissory estoppel include: (1) a ***promise*** reasonably ***expected to induce reliance***; (2) ***reasonable reliance inducing action*** on the part of the promisee; and (3) ***detriment*** to the promisee.

*Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 174–75 (Utah Ct. App. 1993) (cleaned up) (emphasis added).

66. Defendants were aware that the money transferred to them out of the Loan had to be paid back if the sale of the Utah Properties did not go through.

67. In fact, Defendants promised to return those funds should the sale of the Utah Properties not occur.

68. Defendants knew that Plaintiffs relied upon this promise in entering into the Loan, signing the Note, and transferring a portion of the funds to Defendants.

69. As a result of relying on these representations, Plaintiffs suffered injury/damage, including monetary damages, in an amount to be proved at trial.

## FOURTH CAUSE OF ACTION

### ~ Violation of the Implied Covenant of Good Faith/Fair Dealing ~

*Against All Defendants*

70. Plaintiffs incorporate by reference all other paragraphs herein.

71. "An implied covenant of good faith and fair dealing inheres in every contract." *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193, 197.

72. "A violation of the covenant is a breach of the contract." *Id*.

73. It was established by the Court of Appeals that:

> Determining whether a breach of the covenant has occurred requires a review of more than just the text of the contract itself. This broad review required to determine whether a breach has occurred is generally one of fact, not law, and thus is ordinarily left to the jury or finder of fact.

*Brown v. Weis*, 871 P.2d 552, 564–65 (Utah App. 1994) (cleaned up) (emphasis added).

74. There were implied covenants of good faith and fair dealing in the signing of the Note. These implied covenants included, but are not limited to, that the loan would be forgiven upon closing on the sale of the Utah Properties and/or repaid if the sale did not occur.

75. Defendants' actions, including not attempting to secure funding for the sale of the Utah Properties and not returning the funds when the sale did not go through, were intentional.

76. These intentional acts by Defendants were inconsistent with the reasonable expectations of Plaintiffs, and caused injury to Plaintiffs, including monetary damages, in an amount to be proved at trial.

## FIFTH CAUSE OF ACTION

### ~ **Fraudulent Inducement** ~

*Against All Defendants*

77. Plaintiffs incorporate by reference all other paragraphs herein.

78. Defendants made false statements about the following important facts relating to the sale of the Utah Properties and/or the terms of the Note:

    a) Defendants had secured the funding from the bank that was necessary to close the sale of the Utah Properties;

    b) The loan from NuHome was necessary in order to close the sale of the Utah Properties;

    c) The loan from NuHome would be forgiven upon the sale of the Utah Properties;

    d) The lender (NuHome) was a participant in the purchase of the properties;

    e) Jensen was acting as an agent of NuHome, and

    f) Defendants had the ability to complete the sale.

79. These important facts were not true.

80. Defendants knew these statements were false, and/or they were made with a reckless disregard for the truth.

81. Defendants intended that Plaintiffs would rely on these statements in signing the Note with Defendant NuHome and transferring a portion of the funds to Defendants Jensen and/or Lone Peak.

82. Plaintiffs reasonably relied upon these representations in taking out the Loan, entering into the Note, and transferring funds to Defendants Jensen and/or Lone Peak.

83. Plaintiffs would not have signed the Note if they had known the representations were not true.

84. As a result of relying on these representations, Plaintiffs suffered injury/damage, including monetary damages, in an amount to be proved at trial.

85. As a result of Defendants' fraudulent conduct, Plaintiffs are entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION

### ~ Unjust Enrichment ~

*Against Defendants Lone Peak and Jensen*

86. Plaintiffs incorporate by reference all other paragraphs herein.

87. Plaintiffs transferred $100,250 of the total $250,000 Loan amount to Defendants.

88. In making this transfer, Plaintiffs specifically relied upon Defendants' representations that:

    a) Defendants required this money for "pre-closing costs" in order to complete the sale of the Utah Properties;

    b) The entire loan from NuHome, including this transferred amount, would be forgiven upon the sale of the Utah Properties;

    c) Defendants were acting as an agent of NuHome, and

    d) Defendants would immediately refund the money if the sale of the Utah Properties did not go through.

89. The sale of the Utah Properties did not occur.

90. Defendants have not returned or refunded the money, in full or in part.

91. Defendants have not provided any accounting as to where or how the money was spent.

92. The retention of this money by Defendants is unequitable under these circumstances.

93. Plaintiffs have been injured by Defendants' retention of this money.

94. Plaintiffs are therefore entitled to an award of damages in an amount to be determined at trial, including recovery of the full amount transferred plus interest.

## JURY DEMAND

Pursuant to F.R.Civ.P. 38, Plaintiffs demand a trial by jury for all issues herein.

## REQUESTS FOR RELIEF

**WHERFORE**, Plaintiffs respectfully demand judgment against Defendants as follows:

1. Compensatory damages, including damages for financial losses incurred by Plaintiffs and emotional distress suffered by Plaintiffs, in amounts to be established at trial.

2. Pre- and post-judgment interest.

3. Punitive damages.

4. Costs and attorney fees to the extent they are allowed by law.

5. Such other and further relief as the Court may deem just and proper.

DATED this 25th day of April, 2022.

                                               **SYKES MCALLISTER LAW OFFICES, PLLC**

                                               /*s/ Alyson C. McAllister*
                                               ALYSON C. MCALLISTER
                                               *Attorneys for Plaintiff*